IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Rcv'd by: _____

USDC- GREENBELT
'24 JUL 15 AM 8:38

|  |  |
|---|---|
| BRIAN W. HARE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:22-cv-3311-LKG |
| v. ) | |
| ) | Dated: July 12, 2024 |
| DIVISION OF CORRECTION and ) | |
| ORLANDO JOHNSON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

On December 27, 2022, self-represented Plaintiff Brian W. Hare filed a civil rights complaint. ECF No. 1. Hare was granted leave to file an Amended Complaint (ECF No. 4), which he did on February 7, 2023. ECF No. 6. The Amended Complaint, along with a supplement filed by Hare, now serve as the operative pleadings in this matter. ECF Nos. 5, 6. Hare alleges that he was assigned to administrative segregation for an excessive period, during which time he was subjected to inhumane conditions of confinement. *Id*. Hare named the Division of Correction ("DOC") and Orlando Johnson, Warden of Patuxent Institution (collectively the "Correctional Defendants") as Defendants. ECF No. 6.

The Correctional Defendants moved to dismiss the complaint, or in the alternative, for summary judgment in their favor (ECF No. 18), and Hare opposed the Motion (ECF No. 22). The Court granted the Motion in part as to Hare's claim for injunctive relief, which was dismissed as moot. ECF No. 23, 24. The Motion was denied without prejudice as to Hare's claims for monetary damages. *Id*. The Correctional Defendants filed a renewed Motion for Summary Judgment on January 26, 2024, (ECF No. 27) addressing Hare's Eighth Amendment conditions claims for monetary damages. Hare was notified of his right to respond to the Correctional Defendants' renewed Motion pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), but has filed nothing further. ECF No. 28.

The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons outlined below, the Motion will be granted.

I.  **Background**

The Court summarized Hare's allegations in its Memorandum Opinion on November 14, 2023, but reiterates it here, for clarity:

> Hare alleges that on June 6, 2017, he was placed on administrative segregation due to a pending investigation and he remained in that housing assignment until 2022, while suffering "inhumane conditions." Complaint, ECF No. 1 at 2. Specifically, Hare states that he was involved in a murder on August 14, 2016, and was informed that following sentencing, he would be placed on the Interstate Corrections Compact ("ICC") for transfer to a different institution. ECF No. 5. Although Hare was sentenced on September 21, 2021, he remained on administrative segregation throughout 2022. *Id.* at 1.
>
> Hare claims that while he was on administrative segregation, there were mice and roaches running around, and he was not given cleaning products for his cell. *Id.* at 5-6. In addition, he was forced to take ice cold showers, the only light in his cell was a night light, he was not given inmate supplies and clothes, and he was kept in lock down for 24 hours a day, with no access to recreation or the ability to earn credits. *Id.* at 6; ECF No. 6 at 2-3.
>
> According to DOC, Hare was transferred out of Maryland through an agreement with another ICC state on April 20, 2023. *See* Decl. of Jennifer L. Schmitt, DOC Dir. of Case Management, ECF No. 18-3.

ECF No. 23 at 1-2.

The Correctional Defendants renewed their Motion for Summary Judgement on January 26, 2024. ECF No. 27. Therein, they argue that Hare has failed to state an Eighth Amendment claim for unconstitutional conditions of confinement. ECF No. 27-1 at 4. In support thereof, they indicate that, with respect to Hare's claims about insect and mice infestations, a pest treatment is performed at least once per month on the administrative segregation tier, and at other points as needed. ECF No. 7-4; ECF No. 7-5 at 2. As to the allegation that only cold showers were available, Patuxent Institution Captain Tiffanie Carter avers that "[a]t times, the hot water in Patuxent would experience mechanical issues that could lead to the entire institution experiencing problems, including but not limited to the shower water in the entire institution being cold." ECF No. 27-5 at 2. However, Carter explains that "Patuxent has access to maintenance staff 365 days per year" and while she is "aware of certain limited period[s] of time when the hot water in Patuxent was not operating correctly" the water issues "were fixed timely and were not constant." *Id.* Carter explains that inmates on administrative segregation, such as Hare, "are offered access to two hour long blocks of recreation time daily: one hour on the day

2

shift (8am to 4pm) and one on the 4pm to 12am shift," which they may choose to utilize if they would like. *Id.* This can occasionally be "prevented by security concerns or other operational demands." *Id.* Additionally, she states that "in order for the institution to best monitor and manage their safety, inmates on administrative segregation are not permitted to have prison jobs or engage in many types of programming, including credits-bearing assignments." *Id.* Finally, she avers that Hare, like all administrative segregation inmates, was provided two pairs of socks, two shirts, and two boxers on May 21, 2021. *Id.*

In addition, the Correctional Defendants point out that, although Hare claims he was not "given a reason why" he was held in administrative segregation for so long (ECF No. 6 at 2), that is "belied by his earlier acknowledgement that he 'was placed in administrative segregation [due] to [his] involvement [with] another inmate getting murdered at Jessup Correctional Institution back in August 14, 2016.'" ECF No. 27-1 at 4 (quoting ECF No. 5 at 1). Carter avers that "Mr. Hare was assigned to administrative segregation at Patuxent as a 'do not disclose' inmate, i.e. with the highest level of protection. As a 'do not disclose' inmate, Mr. Hare could not be transferred to general population at Patuxent." ECF No. 27-5 at 2; *see also* ECF 27-3, Decl. of Jennifer L. Schmitt ("Mr. Hare is a validated member of a security threat group…and was involved in a high-profile murder of a member of a rival group…Mr. Hare has documentation of enemies in Maryland correctional institutions. As a result, Mr. Hare was placed on administrative segregation pending his transfer out of Maryland pursuant to the Interstate Corrections Compact ("ICC")). Carter explains that "[a]dministrative segregation is special confinement housing used by DOC when an inmate requires close supervision, segregation from the general population, or both. It may be used to ensure the safety and security of the individual inmate, institution, staff, the general inmate population, or some combination of these factors." *Id.* at 1-2.

Finally, the Correctional Defendants maintain that, if construed to state a Fourteenth Amendment due process claim, Hare's Amended Complaint similarly fails to state a claim. ECF No. 27-1 at 7.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor

3

without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III. Analysis

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'" *Id.* (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See*

4

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97. Thus, the deliberate indifference standard is applicable here.

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Since 'routine discomfort' is part of prison life and 'society does not expect that prisoners will have unqualified access to health care,' in order to demonstrate the objective component of conditions-of-confinement or medical care claims prisoners must demonstrate 'extreme' deprivations or neglect of 'serious' medical needs." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (citing *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).

Here, Hare has failed to demonstrate the extreme deprivations required. The record reflects that Hare was placed on administrative segregation, and could not be in general population, for his own safety and the safety of others following his involvement in a murder at Jessup Correctional Institution. While the time he remained on administrative segregation was lengthy, that fact alone does not give rise to an Eighth Amendment violation. The record demonstrates that pest infestations and maintenance issues were timely addressed, that Hare was provided with clothing, and that he received regular opportunities for recreation. Hare has not shown that the deprivation of his basic needs were objectively sufficiently serious, nor has he demonstrated that the Correctional Defendants acted with a sufficiently culpable state of mind. Summary judgment will be granted in favor of the Correctional Defendants.[1]

---

[1] In its November 13, 2023, Memorandum and Order, the Court directed the Correctional Defendants to "file a responsive pleading that addresses Hare's Eighth Amendment conditions claims for monetary damages." ECF Nos.

## IV.   Conclusion

By separate Order which follows, the Correctional Defendants' Motion for Summary Judgment (ECF No. 27) shall be **GRANTED**.

7-12-2024
Date

LYDIA KAY GRIGGSBY
United States District Judge

---

23, 24.  In addition to the briefing requested by the Court, the Correctional Defendants also argue in their Motion that, even if Hare's Amended Complaint is construed to allege a Due Process claim, he has failed to state a claim. The Court agrees. *See Prieto v. Clarke*, 780 F.3d 245, 249 (4th Cir. 2015) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) ("*Sandin* holds that, while a state statute or policy may 'create liberty interests' giving rise to Due Process protection, this is so only if the denial of such an interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'")).  Hare has neither identified a state statute or policy that would create a liberty interest, nor has he demonstrated an atypical or significant hardship he faced compared to ordinary prison life.  Thus, this claim, too, fails.

6